we will be reviewing the immigration judge's decision. Basically, there's two issues here, and the first issue is whether or not the petitioner, Mr. Melgarejo, has an objectively reasonable fear of returning to his country. Well, assuming that he does, the issue that I'd like you to address is whether any persecution that occurred or any fear is related to a protected ground as distinct from being related to criminal activity. Right, Your Honor, and the judge characterized it as a criminal act, and I believe that's a mischaracterization based on case law such as the CRV Elkhurst and the records, the substantial evidence in the record. The record actually shows that the political groups and narco-trafficking is linked in producer states such as Peru and that the drug traffickers or narco-terrorists, they have a vested interest in maintaining a weak legitimate government, and that they're basically rivals where, in some cases, it's akin to the De Sere kleptocracy where the government's founded upon corruption and thievery. This is like a narco-cracy where the government, corruption has invaded every level of the government, or at least the lower levels of the government. Even the State Department reports corroborate that, and as De Sere v. Elkhurst says, this can be distinguished from a forced recruitment case in that it's not a guerrilla group, it's a rival to the government. The drug traffickers have the means and have the resources as a national government, especially a weak national government such as the government of Peru. Are there any cases of which you are aware that make the connection that you seek to have us make in this case? Well, Your Honor, there's no decisions that, there's no reported decisions at all. There was a decision, I believe, in the Ninth Circuit where someone made a similar argument. However, it was remanded and the court never reached the decision in this case. And I can't cite that case to the court, but I know that there was one that was remanded. The issue was never reached. But I believe that, you know, with the facts and the evidence, the only facts and the evidence that link narco-trafficking and government, and specifically narco-trafficking and the government of Peru, is this report, the article by the Ph.D. student Mr. Krasna from Bar-Ilam University. And it's evidence. The immigration judge didn't discount it. He didn't comment on it. But that's, but we don't re-weigh the evidence. Our job is just to decide if the evidence compels, requires a finding in your favor. Right, Your Honor. Excuse me. I understand that, Your Honor. What I'm trying to say is that if it's the only evidence, if on one side there's no evidence, and if the only evidence is on the other side, then obviously the only evidence is going to outweigh no evidence. Well, it's not the only evidence. There's evidence that other family members have remained safely in the country and that these were criminals, not members of the government as such and so forth. So why isn't that countervailing evidence? Well, Your Honor, I'd like to address the fact that some of the family members remained in Peru. And it's true that they did. The mother and the sisters remained in Peru. The females of the family remained in Peru for two and a half to three years. The record's unclear exactly how much time. They're here in the United States presently. But the record says two and a half to three years for them. However, they're not similarly situated to the males in the family in the culture, the Peruvian culture. And as the State Department's profile on asylum claims points out, I believe it's like 109 in the administrative record, where women actually have claims to asylum based on their particular social group or have at least put forth claims to asylum based on their particular social group as something less than society. There's a societal prejudice against women. And women have even submitted asylum claims saying that they're a group within themselves from Peru. So I believe that, you know, men situated in Peru and women situated in Peru are not similarly situated. The women wouldn't be as much of a prize for the narco-trappers to attack as the men would be. So that's why I believe that we can at least somewhat discount that kind of evidence, Your Honor. Additionally, the government in Peru can't control the narco-trafficking. And just because the narco-traffickers aren't government related, that doesn't nullify this. Just because they're not government actors, if the government can't control them, the case law is clear that if the government can't control them, then they can still be covered under the act if the act can be considered to have entered imputed political opinion. That is, the drug traffickers think that they're against them. And once again, this can be distinguished from a forced recruitment case where, you know, where the guerrilla groups or the subversive group comes in and tries to recruit people to do their bidding in the balance of power. There's no balance. It's an unequal, more unequal balance of power here as it was in Desiree v. Elkert. This is just akin to the Tantan Makutes, the kleptocratic enforcers of the Haitian government under Duvalier. This is the same kind of enforcement where, you know, the Krasner Report talks about the lead or silver, where if you do the bidding of the narcotraffickers, you get compensated. That's the silver. And if you don't, it's the lead. That's the bullet. And so there's the same kind of terror and intimidation that the narcotraffickers use that the government can't control in Peru. And for that reason, the United States government has stepped in, and there's a report on the narcotic strategy by the Department of State that also corroborates the fact that there is corruption in the lower levels of the government in Peru, which doesn't enter any kind of sense of safety for the people. I mean, the court may ask, why didn't Mr. Melgarejo simply go to the police to report this thing? Well, the answer is fairly simple in that the police in Peru, unlike the police here, don't give that same kind of sense of security that we have here in the United States. They have institutional immunity. They're not responsible for their acts, and they're infamous for their human rights violations. So for those reasons, this can be distinguished from the or could be put in line with the Desir case and the Duvalier regime in Haiti. And if there are no other questions, Your Honor, I'll defer to the counsel. I'll take the rest of your time for rebuttal. Thank you. Lawrence. May it please the Court, my name is Victor Lawrence, and I represent the Attorney General. This Court should deny this petition for review for two reasons. First, Mr. Suarez failed to show credible, direct, and specific evidence that supports an objectively reasonable fear of future persecution in Peru, and second, he failed to show a nexus between that alleged fear of persecution and a protected ground under the Immigration and Nationality Act. This Court reviews the immigration judge's opinion for substantial evidence, where this Court can only reverse the immigration judge's decision if it feels that any reasonable adjudicator would be compelled to find a conclusion to the contrary, that a requisite fear of persecution existed. We submit that under a substantial evidence review, this petition should be denied. Suarez had a full and fair opportunity to be heard. Seven years after he arrived in this country, he spoke with an INS asylum officer. He then had a hearing before an immigration judge and an appeal before the Board of Immigration Appeals. All along the way, no one believed he had a reasonable objective fear of future persecution in Peru. I'd like to address the objective fear for a moment because, as you know, this is a case purely based on a well-founded fear of future persecution. There's absolutely no allegation of past persecution here. You could show a future fear, a well-founded fear of future persecution, by showing credible, direct, and specific evidence in the record to support this reasonable fear. It's our contention that he did not have that specific evidence to support that, whereas the immigration judge relied on substantial evidence in the record to show that he did not have an objectively reasonable fear. First, this petitioner, Mr. Suarez, never even met the persecutor who he alleges he fears if he were to return to Peru. He never met Marco Meza, and he was never threatened by Marco Meza. As Your Honor pointed out, he also had his mother and siblings who remained in Peru. He does have the same name as his father, though, correct? Yes. And his theory was that he might be mistaken for his father or that, I guess, that revenge would be taken upon him in a way that would not be taken upon his mother and his sister. Well, I listened with interest to my opposing counsel's argument that somehow women are treated differently than men in Peru. I don't think the record supports that. I turned to the page that he recommended the court look at, and while women might have a problem with domestic violence, as that page seems to indicate in the record, I don't think there's any evidence in the record to suggest that Marco Meza, a particular drug trafficker, would treat the male members of the Suarez family differently than the female members. I don't think there's absolutely no evidence in the record to suggest that. And here, as you pointed out, the mother and the siblings lived in Peru for two-and-a-half to three years after Mr. Suarez had left, and nothing happened to them. They didn't even receive a single threat, as the record indicates. And also, as far as other things that the immigration judge relied on to show that there was no objective reasonable fear, the immigration judge also pointed out that the father, when he left Peru, he didn't ruffle any feathers with this drug dealer, Mr. Meza. He simply resigned and left the country. So there's absolutely no, it's purely speculation on the asylum applicant's part, that this drug dealer would be interested in coming after Mr. Meza for his passive act, coming after Mr. Suarez for this passive act of simply resigning and leaving the country. But between the facts that he never met Marco Meza, he was never threatened by him, that his family remained there for two-and-a-half to three years, that his father simply resigned and didn't ruffle any feathers with Marco Meza, and that eight years passed between the time that Mr. Suarez left Peru and the time of the immigration hearing, now 13 years, but an eight-year period that the immigration judge reasonably relied on in saying, this guy does not, has not shown an objectively reasonable fear of future persecution. So I'd urge the Court, it's not even necessary to get to the next step, which I'll get to momentarily about imputed political opinion, but this Court could easily determine that there was substantial evidence in the record that the immigration judge relied on to show that he did not have an objectively reasonable fear of a well-founded fear of future persecution. With respect to imputed political opinion, I'd first note for this Court that Mr. Suarez, when he initially filed his application for asylum, did not suggest what particular grounds he was going on as far as the protected grounds under the Immigration and Nationality Act. This idea of imputed political opinion didn't come up until seven years after he entered the country and after the asylum officer rejected his claim. Initially, all he said in his application for asylum didn't even mention Marco Meza, by the way. The initial application simply said that he felt that Peru was not a stable country and that he might be taken hostage if he returned there without explaining any reason why he might be taken hostage. So it wasn't until this appeals process came up where I think the applicant realized that he had to find some way to hook this into a protected ground, and that's when they developed this theory, well, let's call this an imputed political opinion. But I believe that the immigration judge correctly determined that even if he had this objective reasonable fear of persecution, which the immigration judge I think credibly or legitimately said he did not have, even if he did have that, he didn't show a proper nexus between that fear of persecution and imputed political opinion. One thing I heard my opposing counsel state was that, well, if you don't have anything on one side and you don't have anything on the other side, then you should believe the asylum applicant. Well, that's not the correct balancing of the burdens. It's the asylum applicant who has the burden of proving his case that he deserves asylum, and he did not do that here. All he demonstrated was that there's some criminal in Peru, Mr. Meza, who might hurt him because his father refused to engage in unethical accounting practices. It's purely a criminal act that's being alleged that Mr. Meza wanted him to fix the books in some way, and the father said that he didn't want to do that, and he just left the country and resigned. He didn't turn Mr. Meza into the authorities or anything like that. He simply said, I don't want to engage in what I perceive to be unethical accounting practices. This Court has held that to establish imputed political opinion, an applicant must show that his persecutors actually implied a political opinion to him, to the applicant. At best, what they're showing here, the applicant is showing here, is that perhaps Mr. Meza had something against his father. There's absolutely nothing in the record to support the idea that there's threats or a possibility of persecution against the applicant himself. So I'd also suggest that the article in the record from the Israeli doctoral student at Bar-Ilan University is not relevant to this Court's consideration. While that record clearly shows something we all know, that Peru has a problem with drug traffickers, there's nothing in that record to support the allegation that Mr. Meza, who is not related to the government of Peru but is simply a drug trafficker in Peru, might exact revenge on the son of somebody who used to work for Mr. Meza. So I would suggest that that article is not helpful to this Court's consideration. In wrapping up, I'd just state again that there's absolutely no evidence of an objectively reasonable fear, but the immigration judge did rely on substantial evidence, those four factors that I listed, to show that the fear was not reasonable, that he never met Marco Meza and never was threatened by him, that his mother and his siblings lived in Peru for two-and-a-half to three years afterwards without any threats of persecution, and that eight years passed between the time of his father leaving the country and the applicant leaving the country and the immigration hearing, as well as the fact that the father didn't ruffle any feathers with Mr. Meza. He simply passively resigned and left and didn't report Mr. Meza to the authorities. All those facts relied on by the judge support the fact that he didn't have an objection to reasonable fear. One thing I didn't hear argued today but submitted in Petitioner's briefs was the idea that the immigration judge was speculating or engaging in conjecture. We strongly refute that. Those four facts are facts. Those aren't speculation. And certainly any immigration judge is entitled to draw inferences based on those facts. Counsel, your time has expired, and I think we understand your position. Thank you. Thank you. Mr. Rios, you have some rebuttal time remaining. Thank you, Your Honor. Well, I'd like to at this time address the substantial evidence for the objection to reasonable fear. Although Mr. Melgarejo, the Petitioner, was never threatened personally, he was threatened, and there's evidence in the record that shows that not only was his father threatened, but the father and family were threatened. Mr. Melgarejo is the son of his father, his same name, and so he indeed did receive threats, not personally, but he did receive them. The fact that he never met the Mesa family, it's irrelevant. And the fact that he was never personally, also irrelevant. The fact that his father's alleged, what the government is alleging, that his father didn't ruffle any feathers and it was a passive act, well, that doesn't really hold any water because, first of all, it's contrary to the facts and evidence. The facts and evidence show that the untimely departure of Mr. Melgarejo's father spurred audits in this company. What happened after that? What the fallout was? We don't know. That is not in evidence. However, the immigration judge did speculate, and this is where the speculation and conjecture come in, that no one was arrested. We don't know that. It's not in evidence. That no one was charged. We don't know that. It wasn't in evidence. And no one was indicted. We don't know that. It was not in evidence. This is the same kind of conjectural finding that the same immigration judge made in Vera Viegas, and this court rejected that kind of finding and said that, you know, it needs to be based on specific cogent evidence in the record, not by the immigration judge placing itself in the shoes of that person or the persecutor. That's just not allowed by the immigration law, and that's conjecture and speculation, and that's basically how the immigration judge rejected the objective prong of the well-founded standard for the respondent. Now, the government has suggested that, you know, possibly this is a crafted argument for appellate review. Mr. Malgorrejo submitted his asylum application pro se, and this court has often found that asylum applicants are generally refugees who are illiterate, poor, and, you know, without the wherewithal to discern the immigration laws. In fact, the immigration laws have been likened to a maze, or, you know, you need a Talmudic scholar to interpret the immigration laws. And certainly a gentleman, a high school-aged person, wouldn't be able to fathom what is needed for this, especially if they do it pro se. So for that reason, and besides that, the immigration judge found him credible the whole way, I just don't think that that's something that the court should take into consideration. Your Honor, just because the immigration judge's decision can't be reconciled with a record or case law, we ask that you remand this case to the BIA for exercise of their discretion for Mr. Malgorrejo's asylum application. Thank you. Thank you, counsel. The case just concludes. No further arguments.
judges: Brunetti, Tg Nelson, Graber